*48 The opinion of the Court was delivered by
Dargan, Ch.
I think it will scarcely be doubted that a Commissioner in Equity has no authority to pay over monies that have come into his hands as a receiver without the order of the Court. His whole duty, unless otherwise ordered and directed, is simply to receive and safely to keep the fund. Such fund is in fact in the safe keeping of the Court itself, which is obliged to use the personal instrumentality of its officers in the performance of this duty.- What right has the Commissioner to apply or distribute funds that are in the charge of the Court, and which are in his hands only as a depositary 1
If a Commissioner, under these circumstances, undertakes to pay out monies, he assumes the responsibility of paying it out to the right person, — to the person who would be entitled to receive it, if it was done in a formal manner under the sanction of the Court. His unauthorized payments would not be permitted to have the effect of defeating the rights of the parties, or varying or modifying them in any way. These are propositions that will hardly admit of dispute.
The fund in question was the estate of the complainant Martha Jackson, the wife of the defendant, William Jackson. It was a fund derived from her equitable choses, placed in the hands of the defendant McAliley for collection and safe keeping.
I refer to the circuit decree for the manner in which the estate of the complainant in this fund originated, and in which it came into the possession of the said Samuel McAliley. It was her unascertained, undivided interest or share in certain choses in action derived from the estate of Daniel Green, to which she was entitled as tenant in common with her five brothers and sisters. There was not, and never has been any decree making a partition of the fund, or severing the rights of the parties. In Verdier vs. Hyrne, 4 Strob. 463, it was decided by the Court of Errors, that, where a married woman was possessed of a slave as tenant in common with one or more other persons, the marital rights did not attach, there being no partition. And *49 this, though the tenants had a vested legal estate in common, and though there had been a decree for partition in the wife’s life, which had not been made before her death.
It is not disputed, that the complainant, Mrs. Jackson, had a right to a decree for a settlement when this fund first came into the hands of the defendant as the receiver, under the order of the Court. Nor could it be disputed, that, if the fund still remained in the hands of the defendant, she would, at this day, be entitled to the same decree.
It is said, however, that the share of the fund to which the complainant is entitled, has for the most part, if not altogether, been paid over to the complainant’s husband by the defendant: and that, although this has been done without the order of the Court, or any waiver by the wife of her equity, the marital rights have thereby attached.
But the Commissioner, as I have before stated, has no right to pay out monies in his hands without the order of the Court. If he does, it is at his own peril; and upon the responsibility of paying it out to the right parties, and in such manner and on such conditions as the Court would have ordered it paid. The rights of the parties are not to be defeated, varied, or modified, by such unauthorized and illegal payments.
Upon this, and similar reasoning, the Circuit Court, at July term, 1851, decreed that the payments by McAliley to William Jackson were null, and that the complainant was entitled to a settlement of the fund; and that McAliley pay over to her trustee, her share of the said fund, as if the payments to Jackson had never been made. The decree also referred it to the Commissioner to report upon the accounts.
At a subsequent stage of the proceedings, (when the case was before the Commissioner on reference,) the defendant offered some further evidence in opposition to the right of the complainant for a settlement. The Commissioner has reported this evidence. It consists of extracts from the minutes of the Court for July term, 1834, and other documents which are of record.
The Commissioner in his annual report at that term, on the *50 estate of the infant legatees of Daniel Green, states an account, in which he credits himself with $550 as paid to William Jackson. On the minutes of the Court is an order in words as follows :
“ Ex parte
The minor Legatees of Daniel
Green, deceased.
Report of money received and paid away.
The Commissioner having read his report of monies received and paid away, as received of the funds of the said legatees, and the same having been examined by Mr. McDowell as solicitor for the legatees, and no objection having been made to the same, ordered that the same be confirmed.
(Signed) HENRY W. DeSAUSSURE.
July 4, 1834.”
A similar report at June term, 1835, was also submitted and confirmed.
It is contended, that the rights of the complainant are thus concluded (as to the extent of the charges made for payments to Jackson in these reports,) by the judgment of the Court.
The first objection to the evidence is, that it was not submitted at the proper time. The bill and answer made the question directly, as to the right of the complainant to a settlement. The Court heard and decided this question. The Commissioner was ordered to “report all costs and expenses with which the share of the complainant in said funds is chargeable.” He was also ordered to “ report what amount of estate belonging to the complainant has been collected by the said Samuel MeAliley, and also what remains to be collected.” The evidence which has been cited, was foreign to the inquiry with which the Commissioner was charged: and bore upon a question which had already been adjudicated.
But the evidence, if it had been brought forward at the proper time, would, if admissible at all, have been perfectly inconclusive. It was an ex parte proceeding, in which the Com.' missioner alone was a party. The complainant was not a party, *51 nor was she represented by any one. It is recited in the order, that the report had been examined by Mr. McDowell, “solicitor for the legatees.” It does not say that Mr. McDowell assented; but that no objection having been made, the report was confirmed. It does not appear, that Mr. McDowell was the solicitor of the complainant, or of the infant legatees, in reference to their matters of account with the Commissioner; or that it was necessary for them to have a solicitor, after their funds had come into the safe keeping of the Court.
It is as well for me to state here, broadly, (for there seems to be some misapprehension upon the subject,) that these annual reports and accounts which the Commissioner is required to make, conclude nothing, as to the rights of the parties whose estates or funds they purport to give an account of. They are the ex parte reports of the Commissioner, and commit no body but himself. Their object is to communicate information from the Commissioner to the Court, and to any party who may be desirous of looking into his administration. It is intended as a check upon the Commissioner. But after all that a Chancellor can do in supervising the annual returns of the Commissioner, it affords but a very imperfect check, and a very inadequate security. I might say much more upon this subject, but I forbear.
All that I have said, in vindication of the decree of July term, 1851, has but little pertinency to the issues now before this Court. No appeal has been taken from that decree. In pursuance of the decree the Commissioner has held his reference, and at July term, 1852, he submitted his report. The cause came before the Court at that term, on this report and the exceptions.
The defendant made the same opposition to the complainant’s claim for a settlement, in the form of exceptions to the report, that he had previously made on the circuit trial, and which had been decided against him. In addition to these, he excepted, that $50 paid as a fee to P. E. Pearson, had not been allowed as a credit on his accounts. The complainant’s soli *52 citor withdrew, on the last circuit trial, his objection to this item as a credit; and it was allowed. Thus that question was disposed of.
The defendant also excepted to the report, because the Commissioner, in stating the accounts, had charged interest against him. This question as to interest, was the only new issue in the case,' — the only point that had not been previously adjudged.
The Chancellor who last heard the cause (on the report and exceptions,) very properly declined to review, and decide any of the matters that had been adjudged by the preceding decree. To have done so, would have been to entertain appellate jurisdiction. And in the same way, his successor might have been called upon to consider and reverse his decision. It is needless to pause here, for the purpose of shewing the utter absurdity of any other rule than that by which the Chancellor was governed.
The Commissioner, in his report, stated the interest account in two ways. He stated it first, on the supposition that the complainant was entitled to recover interest from the time the defendant had received the fund ; which was the 7th February, 1832. Stating the account in this way, he found a balance due the complainant on the 1st July, 1852, of $1,882 16. On the supposition that the complainant might not be entitled to interest, except from the filing of the bill, which was the 26th May, 1849, the Commissioner has stated the interest account in that way. Stating the account on this principle, he finds a balance due to complainant, 1st July, 1852, of $978 55. The defendant excepted to the report for allowing interest at all.
Thus the case was presented to the Chancellor; who, adopting neither of the alternatives presented by the Commissioner’s report, decreed that the defendant was liable for interest from the time he went out of office.
This is an appeal from that decree. The grounds of appeal are as follows: 1. “ Because the Chancellor erred in not sustaining the second exception to the Commissioner’s report, which is: because the Commissioner erred in not allowing the defend *53 ant credits for monies paid by him to William Jackson, the husband of the complainant, and which payments are reported specially to the Court, and which payments after the examination of the solicitor for complainant and others was confirmed by an express order of the Court.”
The third ground of appeal is, “ because the Chancellor erred in not sustaining the sixth exception of the complainant, which is, because the complainant having had her whole property, except the amount in controversy, settled upon her, no additional settlement should have been made; and especially so, iuasmuch as her husband had received the same, and she had, to a certain extent, the benefit of it.”
It is perfectly obvious that the errors charged in these two grounds, no appeal are errors (if they be such) which are imputable only to the first decree ; and from which, as to these grounds no appeal has been taken. The Chancellor who presided at the last trial, and heard the cause on the report and exceptions, did not affect to decide the questions involved in these two grounds of appeal. He neither affirmed, nor denied the propositions of the appellant. He only sought to carry out and to enforce a previous decree in the cause; which he found upon the record, which, as a judicial'order, was binding upon him, and which was irreversible, except by way of appeal. If the decree had in his judgment been erroneous, (which I feel authorized to say was not the case,) he would not, and could not, have reversed or modified it. No error is imputable to his decree on this account. But the appeal should have been from the first decree, of which the appellant in this respect makes no complaint.
The second ground of appeal is, “ because the Chancellor has erred in not sustaining the fourth exception of the defendant to the Commissioner’s report; which is, that the Commissioner should not have alllowed any interest on the money in his hands which had been paid to the husband of the complainant.”
This Court concurs in the decree of the Chancellor as to the *54 interest. For, assuming the first decree to be correct in ordering a settlement of the fund, (and for the purposes of this appeal trial, and until said circuit decree is reversed, this must be assumed,) the first default which the defendant committed in respect to this fund, was when he failed to pay it over to his successor, on his retirement from office, as by law he was required to do.
A Commissioner in Equity is not liable to pay interest on money which has come into his hands as a receiver or simple depositary. He is required to receive, and forbidden to pay out, or to invest, on his own mere motion. In such cases it would be unjust to charge him with interest — which, if it were allowed, would consume all his profits. But if he is ordered to pay out, and a demand is made by one authorized to receive ; if he is ordered to invest a fund, or to make any appropriation or disposition of it, either by the law, or by a special order of the Court, and omits to perform his duty, he is, and should be, liable for interest. There is an express provision in the Act of 1840, which requires all Masters and Commissioners in Equit}r to pay over the monies in their hands to their successors in office. For the purposes of this case, the fund must be considered as in the hands of the defendant, when he retired from office; and his omission to pay it over to his successor, as by law required, subjects him to liability for interest from that time.
It would not be wise to hold, that the hottest errors of public officers should shield them from liability for the losses which fall upon others, as the consequences of those errors. In the first place it would be impossible to determine, whether the error was unintentional or otherwise. And an imperative public policy would forbid the existence of such a principle. High official functionaries, who set themselves up as qualified to perform the duties, and to administer the affairs of their offices, for which they are supposed to receive an adequate remuneration, must be held to a strict accountability. Their correct deportment, and the manner in which they discharge then-duties, vitally affect the interest and well-being of the whole *55 community. To them, of all others, must the legal maxim apply, that they must be presumed to know the law. Honest errors, more or less, are incident to and inevitable in all officers. But the stipends are supposed to be sufficient to afford a just remuneration for the labors, and a reimbursement for their losses and risks. If this is not the case, it is the folly of the incumbent to have taken the office.
It is ordered and decreed, that the appeal be dismissed, and that the circuit decree be affirmed.
JohnstoN and Wardlaw, CC., concurred.

Decree affirmed.